**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Phillip RICE, Defendant–Appellant.**

No. 96–2351.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1996.

Decided June 19, 1997.

Rehearing Denied July 7, 1997.

Fannie J. Harris (argued), Thomas Edward Leggans, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for plaintiff–appellee.

Patrick W. Fitzgerald (argued), Alton, IL, for defendant–appellant.

Before CUMMINGS, WOOD, JR. and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

We deferred consideration of this appeal until the Supreme Court decided *United States v. LaBonte*, —— U.S. ——, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). Now that each side has filed a memorandum addressing the effect of that case, this appeal is ready for decision.

■ On the day set for trial, Rice pleaded guilty to a cocaine offense. His record of convictions makes him a career offender, who under 28 U.S.C. § 994(h) must be sentenced "at or near the maximum term authorized for" the offense. According to Amendment 506 to the Sentencing Guidelines, this means the maximum for the "base" offense, rather than the maximum after considering enhancements for the gravity of the crime or the defendant's prior convictions. Rice asked the district court to sentence him using the theory of Amendment 506. Unfortunately for him, this court held in *United States v. Hernandez*, 79 F.3d 584 (7th Cir. 1996), that Amendment 506 misinterprets § 994(h), and that "maximum term" means the highest statutory maximum after including all enhancements. The district judge denied Rice's motion to withdraw his plea and sentenced him to 292 months' imprisonment (from a range of 292 to 365 months). Had the district court treated Amendment 506 as the correct understanding of § 994(h), the top of the applicable sentencing range would have been 262 months' imprisonment.

■ *LaBonte* establishes that *Hernandez* is correct. Rice contends that a sentence exceeding 262 months nonetheless is improper, because it violates the Ex Post Facto Clause of the Constitution. His theory is that Amendment 506 was in force when he committed his crime, and that later changes of law may not be applied to his detriment. But Amendment 506 was never "in force." It is only an interpretive note to a Guideline. An administrative interpretation of a regulation is not itself a "law" for constitutional purposes. Interpretations come and go, while the law remains. Amendment 506 stated the views of the Sentencing Commission about the meaning of a statute enacted more than a decade before Rice's crime. Section 994(h) has been on the books since 1984, and in force since 1987.

Before Rice committed his crime, this circuit gave § 994(h) the same construction adopted by the Supreme Court in *LaBonte*. See *United States v. Saunders*, 973 F.2d 1354, 1364 (7th Cir.1992). There has been one unchanged statute, and within this circuit one unchanging interpretation of that stat-

ute. No Ex Post Facto law has been enacted, and Rice has not been affected by the sort of shifting judicial interpretation that the Due Process Clause treats the same way the Ex Post Facto Clause treats statutory changes. *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *Bouie v. Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Because Rice does not contend that he learned about Amendment 506 before committing his crime, it is unnecessary to discuss how (if at all) reasonable reliance on an invalid administrative regulation would affect a criminal sentence under the Guidelines. Cf. *United States v. Shaw*, 26 F.3d 700 (7th Cir.1994).

■ The conclusion that § 994(h) authorizes the sentence Rice received sets up his second argument: that the court should have allowed him to withdraw his plea of guilty, because at the time he entered the plea he and his lawyer, aware of Amendment 506, expected that he would receive a lower sentence. The district court did not determine what the lawyer told Rice. We must, therefore, indulge factual assumptions favorable to Rice and ask whether a defendant's misunderstanding of the sentence he was likely to receive compels a district court to allow him to withdraw the plea—either because *the defendant's* ignorance of the law is a "fair and just reason" (Fed.R.Crim.P. 32(e); see *United States v. Hyde*, —— U.S. ——, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997)) or because *the attorney's* bad advice means that defendant has not received constitutionally adequate assistance of counsel.

The district court did not abuse its discretion in denying the motion. Before accepting the plea, the judge asked Rice why he was entering it; Rice did not mention sentencing considerations as his reason. The judge told Rice that the sentence could be as high as 405 months' imprisonment; Rice did not reply that this was inconsistent with his understanding (under which the maximum is 262 months). Not that Rice had to mention Amendment 506 by number; it would have been enough had he alerted

the district court in any fashion to the fact (if it was a fact) that he expected that his sentence as a career offender could not exceed

approximately 22 years' imprisonment. When Rice learned that the sentencing calculations were unfavorable, he began to sing a new song. Too late, the court held—properly so. When a defendant contends that he harbored private expectations, not revealed to the court during the formal exchanges that precede acceptance of a plea, a judge is entitled to be skeptical. A judge may hold the defendant to his statements and omissions in those proceedings. Otherwise they might as well be skipped.

And we do not think that counsel can be called ineffective. Rice assumes that any inaccurate advice about the sentence is ineffective assistance, as if the legal standard were strict liability (a warranty of the correctness of advice) rather than whether the attorney has lived up to the minimal standards of being "counsel" at all. See *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney must render advice in a good-faith effort to further his client's interests, but the Constitution does not guarantee that the advice will be correct. See *United States v. Barnes,* 83 F.3d 934, 939–40 (7th Cir.1996); *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990). Rice's lawyer met the constitutional standard, and to spare. He was aware of Amendment 506. Two courts of appeals concluded that Amendment 506 was a permissible interpretation of the statute; in *LaBonte* three Justices agreed. A lawyer cannot be called ineffective for coming out on the wrong side of a conflict among the circuits. *United States v. Rothrock,* 20 F.3d 709, 713 (7th Cir.1994). (*Hernandez* was released after the plea, but before the sentencing, and expressly disagreed with the first circuit's contrary decision in *LaBonte.*) Moreover, Rice cannot establish prejudice from any bad advice he received, because the judge told him point blank that he could not harbor any particular expectations about the sentence. If, as he now says, his plea was contingent on the application of Amendment 506, he should have said so at the time. Rice never tried to enter a conditional plea under Fed.R.Crim.P. 11(a)(2) or a plea under Rule 11(e)(1)(C) that would have permitted him to withdraw the plea if the judge did not impose a sentence using the approach of Amendment 506. The judge might have responded to efforts along these lines by telling Rice to go to trial, for the witnesses were waiting. Bypassing the opportunity to attach conditions to his plea, Rice also bypassed the opportunity to withdraw the plea if sentencing calculations were higher than he expected. It ill serves the interests of justice to allow a defendant to enter a conditional plea without telling the judge the conditions—effectively, to plead guilty with his fingers crossed behind his back, and with the knowledge that it may be harder to prove the charges a few years hence.

AFFIRMED.